UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    **REPORT,**
                                             **RECOMMENDATION and**
                                             **ORDER**
v.
                                             13-CR-00226-WMS-JJM
YI LIU,
                        Defendant.
_____


        This case was referred to me by Hon. William M. Skretny for supervision of all

pretrial proceedings [7].  The seven-count Indictment [6][1] centers on defendant Yi Liu's alleged

disclosure of trade secrets belonging to his former employer Sprung-brett RDI ("Sprung-brett").

Before me are all portions of Liu's  pretrial motions [51, 70], other than his motion to suppress

statements, which is being addressed in a separate Report and Recommendation [132].  Oral

argument was held on October 1, 2014, November 6, 2014, and June 8, 2015 [66, 72, 121],

following which the parties made additional submissions [128, 129].

        For the following reasons, Liu's' non-dispositive motions are denied, and I

recommend that his motion to dismiss Count 6 be granted, but that his dispositive motions

otherwise be denied.


                        **BACKGROUND**

        The Indictment alleges that Sprung-Brett, a company located in Amherst, New

York, was "engaged primarily in the electric motor actuation technology business, which, in part,

involved researching and developing silent or nearly silent motors, which technology potentially

---

[1]        Bracketed references are to the CM/ECF docket entries.

had both military and civilian applications". [6], p. 1, ¶1. Beginning in or about 2005, Liu commenced employment with Sprung-brett as a mechanical engineer and worked on "the electric actuation system technology which included trade secrets owned by Sprung-brett" (id., p. 2, ¶3). On or about July 20, 2005, he allegedly signed a Non-Disclosure Agreement with Sprung-brett which "imposed, both during and after his employment with Sprung-brett, contractual obligations upon [him] to refrain from disclosing, and to refrain from using, any . . . trade secrets . . . belonging to Sprung-brett for any purpose other than in connection with his employment" (id., p. 2, ¶4). In connection with his employment, Sprung-brett provided Liu with a laptop computer and external hard drive, which permitted him to access Sprung-brett's server and contained trade secrets belonging to Sprung-brett (id., p. 2, ¶5).

Liu allegedly ceased working for Sprung-brett in February or March of 2011 and despite "multiple requests", he did not return Sprung-brett's laptop computer and external hard drive to Sprung-brett until on or about September 20, 2011 (id., p. 3, ¶6). Allegedly, after he ceased working for Sprung-brett and while in possession of its laptop computer and external hard drive, Liu traveled to Virginia and elsewhere and "without authorization . . . accessed the laptop computer and external hard drive and downloaded files . . . from the laptop computer and external hard drive onto a second external hard drive which files . . . contained trade secrets belonging to Sprung-brett" (id., p. 3, ¶¶6-7). Liu allegedly retained the second external hard drive containing Sprung-brett's trade secrets after on or about September 20, 2011 (id., p. 3, ¶7). On or about November 9, 2011, Liu allegedly divulged Sprung-brett's trade secrets to another person (id., p. 3, ¶8).

As a result of this alleged conduct, the Indictment [6] charges Liu with accessing and exceeding authorized access to a protected computer from on or about February 11, 2011 to September 20, 2011, in violation of 18 U.S.C. §§1030(a)(2)(C), (c)(2)(B)(i), and (c)(2)(B)(iii) (Counts 1 and 2); theft of trade secrets from on or about February 11, 2011 to October 10, 2013, in violation of 18 U.S.C. §§1832(a)(1), (a)(2) and (a)(4) (Counts 3 and 4); possession of stolen trade secrets from on or about February 11, 2011 to October 10, 2013, in violation of 18 U.S.C. §§1832(a)(3) and (a)(4) (Count 5); interstate transportation of stolen goods from February 11, 2011 to the date of the return of the Indictment, in violation of 18 U.S.C. §2314 (Count 6); and wire fraud, in violation 18 U.S.C. §1343 (Count 7).


## ANALYSIS

### A.    Motions for Dismissal of the Indictment

Fed. R. Crim. P. ("Rule") 7(c)(1) requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged". An indictment is sufficient if it charges a crime with (1) "sufficient precision to inform the defendant of the charges he must meet"; (2) "enough detail that he may plead double jeopardy in a future prosecution based on the same set of events"; and (3) "contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury". United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999). However, the Second Circuit has "consistently upheld indictments that do little more than to

track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime". Id.

"In deciding a motion to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face." United States v. Larson, 2011 WL 6029985, *1 (W.D.N.Y. 2011) (Skretny, J.). In evaluating the facial sufficiency of the indictment, the court must not "look[ ] beyond the face of the indictment and dr[aw] inferences as to the proof that would be introduced by the government at trial". United States v. Alfonso, 143 F.3d 772, 776 (2d Cir.1998).

"[A]n indictment is not meant to serve an evidentiary function." United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007). Moreover, "Rule 12(b) . . . does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds". United States v. Ground, 2014 WL 9940092, *3 (W.D.N.Y. 2014) (Schroeder, M.J.), adopted 2015 WL 3853071 (W.D.N.Y. 2015) (Arcara, J.). See Rule 12(b)(1) ("A party may raise by pretrial motion any defense, objection or request that the court can determine without a trial on the merits" (emphasis added)). Thus, generally "[t]here is no such thing as a motion for summary judgment in a criminal case". United States v. Parker, 165 F.Supp.2d 431, 458 (W.D.N.Y. 2001) (Arcara, J.). The sufficiency of the evidence may appropriately be addressed on a pretrial motion to dismiss an indictment only when the government offers "what can fairly be described as a full proffer of the evidence it intends to present at trial". United States v. Perez, 575 F.3d 164, 166-67 (2d Cir. 2009), cert. denied, 559 U.S. 1049 (2010).

With these principles in mind, I will address each of the counts of the Indictment individually.

1.  **Count 1 and 2:  Accessing and Exceeding Authorized Access to a Protected Computer**

In Counts 1 and 2 of the Indictment [6], the government alleges that Liu violated the Computer Fraud and Abuse Act ("CFAA"), which makes it a crime to "intentionally access[ ] a computer without authorization or exceed[ ] authorized access, and thereby obtain[ ] . . . information from any protected computer".  18 U.S.C. §1030(a)(2)(C).  Specifically, the government alleges that:

> "Between on or about February 11, 2011, and on or about September 20, 2011. . . LIU, did intentionally and unlawfully access without authorization, and exceed authorized access to, a computer and thereby obtained information from a protected computer . . .  namely, electric actuation system technology, the same being information containing trade secrets and other proprietary information belonging to Sprung-brett." Indictment [6], p. 4.[2]

Liu seeks dismissal of these counts, arguing that the "[c]ourts in the Second Circuit have universally held that the CFAA is limited in it's [*sic*] interpretation to a narrow scope protecting companies from hackers and those who never had lawful access to the information".  Liu's Memorandum [53], p. 6.  Liu alleges that unlike an individual who never had lawful access, he "had been granted access 'in the first place' and . . . never exceeded that access" or "'hacked' into Sprung-brett's computers, [and that] he merely retained information

---

[2]     Counts 1 and 2 are identical, except to the extent they rely on different penalty provisions.

and the computer to which he had access 'in the first place' which he had accessed during his employment" (id., p. 11). In response to each of Liu's facial challenges, the government generally argues that the elements of the offense are adequately pled in the Indictment and are not subject to dismissal at this stage for insufficient evidence. Government's Response [56], p. 2.

While the CFAA does not define the term "without authorization", it defines "exceeds authorized access" as accessing "a computer with authorization and to use such access to obtain . . . information in the computer that the accesser is not entitled so to obtain". 18 U.S.C. §1030(e)(6). I agree with Liu that a number of courts have given a narrow construction to the CFAA, concluding that an employee does not "exceed authorized access" or act "without authorization" when the employee has been granted access to an employer's computer and misuses that access. *See* JBCHoldings NY, LLC v. Pakter, 931 F.Supp.2d 514, 522-23 (S.D.N.Y. 2013) ("This Court finds the narrow approach to be considerably more persuasive: When an employee who has been granted access to an employer's computer misuses that access, either by violating the terms of use or by breaching a duty of loyalty to the employer, the employee does not 'exceed authorized access' or act 'without authorization'"); Amphenol Corp. v. Paul, 993 F.Supp.2d 100, 110 (D.Conn. 2014), aff'd, 591 Fed. Appx. 34 (2d Cir. 2015) (Summary Order) ("Movement within the second circuit has been towards the narrow approach to the CFAA").

Here, however, the indictment alleges that Liu was no longer employed by Sprung-brett at the time he violated the CFAA. Specifically, the Indictment alleges that in February or March of 2011 Liu "ceased working for Sprung-brett", and that despite "multiple requests", he did not return his Sprung-brett laptop computer and external hard drive, and that

while in his possession he accessed this equipment "without authorization" to download trade secrets belonging to Sprung-brett. Indictment [6], p. 3, ¶¶6-7.[3]

   While Liu may have initially had authorized access to Sprung-brett's computers during his employment with Sprung-brett, that authorization ceased when he left employment. Indeed, as the Indictment alleges, Sprung-brett specifically requested the return of this equipment following the termination of his employment. *See* United States v. Steele, 595 Fed.Appx. 208, 211 (4th Cir. 2014) ("[T]he fact that Steele no longer worked for SRA when he accessed its server logically suggests that the authorization he enjoyed during his employment no longer existed"); United States v. Shen, 2015 WL 3417471, *2 (E.D.Mo. 2015) ("The indictment reflects that Shen was given access to Service Provider A in connection with his employment and that he accessed Service Provider A after he had resigned. There is significant authority that such access is unauthorized under § 1030(a)(2)(C))"). *See also* Poller v. BioScrip, Inc., 974 F.Supp.2d 204, 233 (S.D.N.Y. 2013) ("[W]here an employee has certain access to a computer or system associated with her job, that access will be construed as unauthorized within the meaning of the CFAA only where it occurs after the employee is terminated or resigns"); Beta Technology, Inc. v. Meyers, 2013 WL 5602930, *4 (S.D.Tex. 2013) ("Reading the First Amended Complaint in the light most favorable to Plaintiff raises an inference that Meyers may have accessed the computer at the time of his resignation after he was no longer employed by Plaintiff, and thereby accessed the computer without authorization");  LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1136 (9th Cir. 2009) ("There is no dispute that if Brekka accessed

---

[3]  Liu acknowledges that there is no allegation that he accessed Sprung-brett computers, "*except, perhaps the laptop*" after he was no longer working there. Liu's Memorandum of Law [53], p. 11 (emphasis added).

LVRC's information on the LOAD website after he left the company. . . Brekka would have accessed a protected computer 'without authorization' for purposes of the CFAA").

Relying on a series of e-mails between him and Sprung-brett following the conclusion of his employment, Liu alleges that his continued use of the laptop computer was approved and that his authorization to use it had not been rescinded. *See* Liu's Reply Memorandum of Law [64], pp. 25-29; Liu's June 8, 2015 PowerPoint [124], pp. 5-11 of 42. For example, he points to a June 16, 2011 e-mail that he sent to Michael Brewster of Sprung-brett asking how he wanted him to return the laptop computer and external hard drive ([64-1], p. 14 of 33), and Brewster's June 17, 2011 response asking Liu if he wanted "to have a relationship of some kind with Sprung-brett RDI?" (id., p. 18 of 33), but providing no instructions as to how to return the items. Mahoney Affirmation [70], ¶5.

The selected e-mails Liu relies upon indicate that Sprung-brett was interested in having Liu return to work, and while they may lend support for his theory that he had continued authorization to access the laptop computer, they fall short of conclusively establishing that his authorization to access the laptop computer did not terminate. Moreover, the government argues that Liu's reliance on this string of e-mails ignores the witness testimony presented to the grand jury. Government's Response [73], p. 2.[4] In the absence of a complete proffer of the evidence the government intends to present at trial, these factual issues should be left to the jury. Therefore, I recommend that this portion of Liu's motion be denied.

---

[4] The government argued for the first time at oral argument that Liu could not have had any continued employment relationship with Sprung-brett since it was prohibited by the terms of his immigration visa.

## 2.    Counts 3-5:   Theft of Trade Secrets

In Counts 3, 4 and 5 Liu is charged with the theft of trade secrets in violation of the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. §§1832(a)(1) - (4).   Specifically, the government alleges that between February 11, 2011 and October 10, 2013:

> "LIU, with intent to convert trade secrets belonging to Sprung-Brett, that is, Sprung-Brett trade secrets contained in a Powerpoint presentation entitled 'Presentation Outline,' which contained scientific, technical, mathematical and engineering information pertaining to electric actuation system technology with both military and civilian wind turbine applications, the same being trade secrets related to and included in products produced for and placed in interstate and foreign commerce, to the economic benefit of a person other than the owner of the trade secrets, intending and knowing that the offense would injure the owner of the trade secrets, did knowingly steal, without authorization appropriate, take, carry away, and conceal, and by fraud artifice and deception obtain said information and did attempt to do so."  Indictment [6], p. 6, ¶2 (Count 3)[5]

Consistent with the allegations of the Indictment, prior to December 28, 2012, 18 U.S.C. §1832(a)(2) read, in relevant part:

> "Whoever, with intent to convert a trade secret, that *is related to or included in a product that is produced for or placed in interstate or foreign commerce*, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly . . . without authorization copies, duplicates, . . . downloads, uploads, . . . replicates, transmits, delivers, sends, mails, communicates, or conveys such information" is guilty of crime. (emphasis added).[6]

---

[5]     Although Counts 3, 4 and 5 charge Liu with violating different subsections of 18 U.S.C. §1832(a), the relevant portion of all three Counts is identical.

[6]     Effective December 28, 2012, the statute was amended by striking "or included in a product that is produced for or placed in" and inserting "a product or service used in or intended for use in".  *See* Theft of Trade Secrets Clarification Act of 2012,  Pub. L. No. 112–236.  Although this amendment occurred during course of Liu's alleged conduct (*see* Indictment [1], Counts 3-5, alleging

Liu challenges both the "product" and "trade secret" elements of this offense.

### a. "A product that is produced for or placed in interstate or foreign commerce".

Liu argues that "there must be an actual product to which the trade secret is 'related'". Liu's June 8, 2015 PowerPoint [124], p. 13. He argues that through its bill of particulars the government has failed to adequately demonstrate that there is any "product" to which the stolen trade secrets relate. Liu's Reply Memorandum of Law [64], p. 20. In response to Liu's request for identification of "the 'product that is produced for and placed in interstate or foreign commerce' in which the alleged trade secret is used" (Liu's Motion [51], p. 7 of 35), the government states: "Electric actuation system technology with application to Nuclear submarines, Air Force fighter jets and wind turbine technology". Government's Response [56], p. 7.[7]

The statute does not define the term "product." "When a term is undefined, [it is] give[n] . . . its ordinary meaning." United States v. Santos, 553 U.S. 507, 511 (2008). "The ordinary meaning of 'product' is something that is the result of human or mechanical effort or some natural process." United States v. Aleynikov, 737 F.Supp.2d 173, 178 (S.D.N.Y. 2010).

Liu initially argued that in United States v. Aleynikov, 676 F.3d 71 (2d Cir. 2012), the Second Circuit "construed . . .the phrase 'produced for . . . interstate commerce' under

conduct occurring between February 11, 2011 and October 10, 2013), neither party argues for application of the current version of the statute.

[7] In reviewing the sufficiency of an indictment, the indictment is considered "[a]s amplified by a . . . bill of particulars". United States v. Eskow, 422 F.2d 1060, 1064 (2d Cir.), cert. denied 398 U.S. 959 (1970).

§1832 to refer to a product that is 'being developed or readied for the marketplace'" and "stated that a prototype would be an example of product 'produced for,' but not yet 'placed in' interstate commerce that would be protected under § 1832." Liu's Memorandum of Law [53], pp. 12-13.

At the June 8, 2015 oral argument, the government represented that there was a prototype of the motor which was "used, tested, and seen by the Navy".[8]  In his post-argument submission Liu  acknowledges that "there was . . . one . . . prototype at the time [he] was employed at Sprung-brett" and that "the Sprung-brett prototype [can be seen] in operation on You Tube", but disputes whether the prototype was offered for sale or was ready "to be immediately installed to the drive-shaft of nuclear submarines or wind turbines".  Liu's Post-Argument Submission [129], pp. 2-7.  Apparently recognizing that this acknowledgment is inconsistent with his earlier interpretation of <u>Aleynikov</u>, Liu does an about-face by  arguing that "[a] prototype is *not* 'a product that is produced for or placed in interstate or foreign commerce'".  Liu's Post-Argument Submission [129], p. 2 (emphasis added).

Notwithstanding Liu's change of position, <u>Aleynikov</u> plainly states that "[p]roducts that have not yet been 'placed in' commerce but *are still being developed or readied for the marketplace* can properly be described as being 'produced for,' if not yet actually 'placed in,' commerce." <u>Aleynikov,</u>  676 F.3d at 80 (emphasis added).  Thus, even if the prototype was "not ready for market" as Liu argues, this would not undermine its status as a "product". Liu's Post-Argument Submission [129], p. 6.  In any event, given the disputed facts surrounding this

---

[8]     This is quotation is from the digital audio recording of the June 8, 2015 oral argument.

issue, it is not one that can be resolved at this stage. [9]  Therefore, I recommend that this portion of Liu's motion be denied.

###    b.    "Trade Secret"

Liu further argues that "the indictment fails to allege that the information in question qualifies . . . as a 'trade secret,' because it was not subject to 'reasonable measures to keep such information secret'".  Liu's Memorandum of Law [53], p. 14.  "The term 'trade secret' is broadly defined to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if . . . the owner thereof has taken reasonable measures to keep such information secret; and . . . the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public".  18 U.S.C. §1839(3).

---

[9]        Although not argued by the government, the "product" may be the item wherein the electric actuation system technology is applied.  "Nothing in the statutory text, nor anything in <u>Aleynikov's</u> construction of that text, requires that the 'product' at issue in an EEA prosecution be produced by the owner of the misappropriated trade secret. The statute requires only that the stolen trade secret be related to or included in a product produced for or placed in interstate commerce, a requirement which can be satisfied without regard to whether the owner of the trade secret and the producer of the product are one and the same."  <u>United States v. Agrawal</u>,  726 F.3d 235, 247 n. 8 (2d Cir. 2013), <u>cert. denied</u>,     U.S.    , 134 S.Ct. 1527 (2014) (concluding that the theft of computer code whose sole purpose was to identify securities to be traded in interstate commerce (the "product") fell within the scope of the EEA).

The Indictment alleges that "Sprung-brett took reasonable measures to keep [its trade secrets] secret and from which information Sprung-brett derived potential independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public". Indictment [6], p. 2, ¶2. It also alleges that in July 2005, Liu signed a "'Non-Disclosure Agreement' with Sprung-brett which imposed, both during and after his employment with Sprung-brett, contractual obligations upon Liu to refrain from disclosing, and to refrain from using, any proprietary information, including trade secrets, belonging to Sprung-brett for any purpose other than in conjunction with his employment with Sprung-brett" (id., p. 2, ¶4).

Liu makes a variety of arguments directed at the factual underpinnings of these allegations, including that "the 'trade secrets' allegedly stolen were neither identified as such to [him], nor were they given any greater protection from disclosure than the company's general proprietary information in the agreements" (Liu's Memorandum of Law [53], p. 15), that "Sprung-brett did not engage in a continuing effort to maintain the secrecy of the alleged 'trade secrets,' as it only required employees to sign a confidentiality agreement at the outset of their employments and there is no allegation that it ever bothered to specify information it regarded as a trade secret" (id.), that Sprung-brett did not "employee any means of physical security" (id.), that the confidentiality agreements "do not state with any specificity the information to be kept secret" (id., p. 16), and that Sprung-brett's prototype can be seen in operation on YouTube. Liu's Post-Argument Submission [129], p. 6.

In the absence of a complete proffer of the evidence which the government intends to present at trial on the issue of whether Sprung-brett took reasonable measures to keep

its information secret, this issue must be left to the jury. *See* Perez, 575 F.3d at 166-67.

Therefore, I recommend that this portion of Liu's motion be denied.


**3.      Count 6: Interstate Transportation of Stolen Goods**

Count 6 of the Indictment [6], alleges that

"Beginning on or about February 11, 2011, and continuing
thereafter . . . LIU, did unlawfully transport, transmit and transfer
in interstate commerce between the State of New York, the
Commonwealth of Virginia, and elsewhere, a laptop computer and
an external hard drive, both of which were the property of
Sprung-brett, other external hard drives and other computer
hardware and software containing trade secrets belonging to
Sprung-brett, namely, key mathematical and analytical equations
relating to electric actuation system technology, the same being
goods, wares and merchandise of the value of $5,000 or more,
knowing the same to have been stolen, converted and taken by
fraud", in violation of the National Stolen Property Act ("NSPA"),
18 U.S.C. §2314.

The NSPA provides in relevant part that "[w]hoever transports, transmits, or transfers in

interstate . . . commerce any goods, wares, merchandise, securities or money, of the value of

$5,000 or more, knowing the same to have been stolen, converted or taken by fraud" is guilty of a

crime. 18 U.S.C. §2314.

Liu argues that the laptop computer and external hard drive were not stolen since

he returned this property in September 2011 when requested by Sprung-brett, evidencing that he

did not intend to permanently deprive Sprung-brett of its property *See* Liu's Reply Memorandum

of Law [64], pp. 24-25. However, "[t]he Supreme Court . . . [has] broadly construe[d]

Congress's use in a federal theft statute of the word 'conversion,' and more especially, the word

'steal.' Unless Congress states otherwise, we do not discern, through Congress's deployment of

those words, a Congressional intent to proscribe only larcenous thefts infused with the malefactor's intent to permanently deprive the victim of his or her property." United States v. Van Elsen, 652 F.3d 955, 961 (8th Cir. 2011). *See* United States v. Turley, 352 U.S. 407, 417 (1957) (the term "stolen" "includes all felonious takings . . . with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny").

More persuasively, Liu argues that this count must be dismissed "because it is predicated on the supposition that trade secrets are 'goods' under th[e] statute." Liu's Memorandum of Law [53], p. 17. The government concedes that trade secrets are not "goods". Government's Response [56], pp. 3-4. *See* Aleynikov, 676 F.3d at 77 ("[T]he theft and subsequent interstate transmission of purely intangible property is beyond the scope of the NSPA"). Instead, it initially argued that "Section 2314 applies when a defendant steals a tangible object - for example . . . a computer disk - that contains intellectual property", pointing that Count 6 "alleges that Liu transported '*a laptop computer and an external hard drive . . . containing trade secrets*'" (id., p. 4 (emphasis in original)).

Based upon that response, Liu understandably interpreted the government's theory to be that the laptop computer and external hard drive were the stolen goods. Liu's Reply Memorandum of Law [64], p. 21. However, the government contends that this is a "misstatement" of its theory of the case, which is controlled by the allegations as pled in Count 6, and offers no further explanation of what it contends the stolen goods to be. Government's Response to Liu's Amended Pretrial Motions [73], p. 5. Nevertheless, the government's theory of what is alleged to have been the stolen goods (the computer equipment, trade secrets, or both)

is not manifest from the face of the Indictment.   As argued by Liu (Reply Memorandum of Law

[64], pp. 22-23), the Indictment's use and  placement of the term "the same" immediately

following the description of the trade secrets when identifying the allegedly stolen goods,

suggests that the stolen goods are the trade secrets, as opposed to the computer equipment

containing the trade secrets.  *See* Black's Law Dictionary (8th ed. 2004) (defining "same" as

"[t]he very thing just mentioned or described"); In re Conner's Estate, 156 (Pa. 1935)

("Webster's 'New International Dictionary' (2d Ed.), defines the pronoun 'same' as follows:

'With the definite article * * * the one just referred to; - now chiefly archaic except in legal

language'").

Liu also notes that apart from the laptop computer and external hard drive,  the

only other items of tangible property identified in Count 6 are "other external hard drives and

other computer hardware and software", which could not have been stolen as they were his

property.   Liu's Reply Memorandum of Law [64], p. 23. As acknowledged by Liu, the

government cites to United States v. Bottone, 365 F.2d 389 (2d Cir.), cert. denied, 385 U.S. 974

(1966), which held that in certain circumstances the "good" traveling in interstate commerce

need not be stolen in order for there to be a violation of the NSPA.  Liu's Reply Memorandum of

Law [88], pp. 14-15.

In Bottone, the evidence at trial established that the defendants stole papers

outlining manufacturing procedures for certain pharmaceuticals, made photocopies of those

papers and returned the originals to its owner, but  transported the photocopies across state lines.

365 F.2d at 393.   Addressing whether the photocopies "were 'goods' which had been 'stolen,

converted or taken by fraud' in view of the lack of proof that any of the physical materials so

transported came from [the manufacturer's] possession", the Second Circuit concluded that "when the physical form of the stolen goods is secondary in every respect to the matter recorded in them, the transformation of the information in the stolen papers into a tangible object never possessed by the original owner should be deemed immaterial." Id. at 393-94.

While Bottone lends support to an argument that the external hard drive to which Liu allegedly downloaded the trade secrets from the his Sprung-brett computer can be considered a stolen good, Liu points out that this is *not* the theory advanced by the government. Liu's Reply Memorandum of Law [88], p. 15 (*citing* Government's Response [56], p. 7 ("[B]ecause here Liu allegedly *took hardware* with what can be readily analogized to formulae on it, the hardware stands in the shoes of the photocopies in *Bottone*" (emphasis added)).

In any event, as the government correctly recognizes, its theory is controlled by the language of the Indictment, which "this Court must determine is or is not legally sufficient". Government's Response to Liu's Amended Motions [73], p. 5. "It is a rule of criminal pleading that the indictment must be free from all ambiguity, and leave no doubt in the mind of the accused, and in that of the court, as to the exact offense intended to be charged." Rumely v. United States, 293 F. 532, 547 (2d Cir.), cert. denied, , 263 U.S. 713 (1923). "To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure." Russell v. United States, 369 U.S. 749, 770 (1962).

As discussed above, the placement and use of the phrase "the same" in Count 6 renders that count ambiguous as to what are the "goods" the grand jury concluded were knowingly stolen. Since one interpretation of Count 6 is that the alleged "goods" are limited to the trade secrets (as opposed to the laptop computer and other computer equipment containing them) - conduct which the government concedes is not sufficient under the statute - I conclude that this count is facially insufficient. While Liu suggests that short of dismissal I review the grand jury materials to determine whether the laptop computer or trade secrets were the stolen goods found by the grand jury (Liu's Reply Memorandum of Law [88], pp. 10-11), I see no reason to do so, since that too would involve me guessing at what was in the minds of the grand jury at the time it returned the Indictment. Therefore, I recommend that this count be dismissed, without prejudice.

**B.      Misconduct Before the Grand Jury**

Liu seeks dismissal of Counts 1, 2 and 6 "because of misconduct during the presentment of this case to the grand jury, in withholding from the grand jury emails from Sprung-brett representatives leading the defendant to believe that, despite termination of his active employment with Sprung-brett, his continued consulting with Sprung-brett was being sought by Sprung-brett and that he was authorized to continue possessing and accessing the laptop computer . . . while at the same time leading the grand jury to believe that the opposite was the case . . . including false or perjured testimony to this effect in reckless disregard of the truth". Liu's Amended Pretrial Motion [70], p. 1, Schedule 1. However, as the government argues, even assuming that these e-mails could be considered exculpatory and were not presented

to the grand jury, "[t]he government had no obligation to present exculpatory material to a grand jury". United States v. Regan, 103 F.3d 1072, 1081 (2d Cir.), cert. denied, 521 U.S. 1106 (1997) (*citing* United States v. Williams, 504 U.S. 36, 51-52 (1992)). Therefore, I recommend that this portion of Liu's motion be denied.


**C.      Suppression of Evidence**

Search warrants were issued on September 30, 2013 by United States Magistrate Judge Paige Jones Gossett of the District of South Carolina for Liu's residence at 239 Bronze Drive, Lexington, South Carolina [123], for his office and laboratory work bench at Apex Tool Group in Lexington, South Carolina [123-1], and for his person [123-2]. All of the warrants sought records relating to violations of the EEA, NSPA and CFAA, and were supported by the affidavit of Victor Valenzuela, a Special Agent ("SA") with the FBI.

Relying on his arguments directed at Counts 1 through 6 of the Indictment, Liu argues that there was no probable cause for the searches. Liu's Memorandum of Law [53], p. 30. He also challenges the search warrants for overbreadth - both facially and in execution (id., pp. 24-28).


**1.      Probable Cause**

In issuing a search warrant "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a

particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238  (1983). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" <u>Id</u>. at 236. "'[C]ourts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a common sense, manner.'" <u>Id</u>. "[S]o long as the magistrate had a 'substantial basis for concluding' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." <u>Id</u>. Probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found." <u>United States v. Gaskin</u>, 364 F.3d 438, 457 (2d Cir. 2004), <u>cert</u>. <u>denied</u>, 544 U.S. 990 (2005).

Liu repeats his argument directed at the Indictment.  Specifically, he argues that the "warrant application fails to show 'hacking,' or provide a factual basis to conclude which the computer was a 'protected computer' or why, or provide a basis to believe that 'information' actually accessed had a value in excess of $5000, or identify any 'product' in interstate commerce in which the trade secrets were included . . . . [T]he application rested on the same mistaken theory of the law as the indictment, but it explicitly identified the 'goods' as the trade secrets. Likewise, . . . the facts in the affidavit dispel any claim that the computer was the thing 'stolen' because it was returned on request".  Liu's Reply Memorandum of Law [64], p. 33.

Although I recognize that the allegations contained in the search warrant application are not identical to the Indictment, they are similar, alleging that Liu left employment with Sprung-brett in approximately February 2011, but retained Sprung-brett's computer and external hard drive until September 20, 2011, notwithstanding "repeated requests" by Sprung-brett for the return of this equipment (Valenzuela Affidavit [123], ¶¶18, 21, 24). It also alleges

that a forensic examination of the laptop computer determined that after Liu was no longer employed by Sprung-brett, he accessed 277,000 files stored on that device (id., ¶26).

For the reasons discussed above, the allegations in SA Valenzuela's Affidavit that Liu retained the laptop following the termination of his employment despite requests for its return and continued to access it are sufficient to establish probable cause that a violation of the CFAA occurred. *See, e.g.,* Shen, 2015 WL 3417471 at *2 ("The indictment reflects that Shen was given access to Service Provider A in connection with his employment and that he accessed Service Provider A after he had resigned. There is significant authority that such access is unauthorized under § 1030(a)(2)(C))").

SA Valenzuela's Affidavit also stated that "Sprung-brett's motor actuation system produced the quietest motor [the Naval Sea Systems Command] had ever tested", that Liu stole trade secrets related to that technology, that the system could "potentially be used in a Joint Strike Fighter Aircraft or in an Ohio-class nuclear submarine", and that "the research (and the work product produced by that research) . . . has application to wind turbine technology". Valenzuela Affidavit [123], ¶5, 13, 15, and p. 11, n.1. Therefore, I conclude that there were sufficient allegations to establish probable cause that there was a trade secret related to or included in a product produced for interstate or foreign commerce, as required for a violation of the EEA. *See* Aleynikov, 676 F.3d at 80 ("Products that have not yet been 'placed in' commerce but are still being developed or readied for the marketplace can properly be described as being 'produced for,' if not yet actually 'placed in,' commerce").

As to whether SA Valenzuela's Affidavit established probable cause for a violation of the NSPA, Liu argues that Magistrate Judge Gossett was "clearly advised that

'goods' the government relied on were the trade secrets, because it was the only thing as to which a value was given in the application". Liu's Reply Memorandum of Law [64], p. 33. However, since "intangible components of tangible items may contribute to the $5,000 value requirement", I conclude that this does not establish that Magistrate Judge Gossett only relied on the trade secrets as being the allegedly stolen "good". United States v. Martin, 228 F.3d 1, 13 (1st Cir. 2000). *See also* United States v. Brown, 925 F.2d 1301, 1308 (10th Cir. 1991) ("a chemical formula written on a stolen piece of paper [may] contribute to the value of the item in order to satisfy the $5,000 statutory minimum for §2314").

Moreover, SA Valenzuela's Affidavit indicated that Liu retained the laptop computer and external hard drive belonging to Sprung-brett despite "repeated requests" for its return and that when he did return the laptop and external hard drive, they were shipped by Liu to Sprung-brett from Virginia, thereby indicating that they traveled in interstate commerce. Valenzuela Affidavit [123], ¶24, p. 15 n. 9. Therefore, I conclude that there was sufficient probable cause to support that there was a stolen good that traveled in interstate commerce.

### 2.     Overbreadth/Lack of Particularity

"General warrants of course, are prohibited by the Fourth Amendment." Andresen v. Maryland, 427 U.S. 463, 480 (1976). "In order to prevent a 'wide-ranging exploratory search,' . . . the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) (*quoting* Maryland v. Garrison, 480 U.S. 79, 84 (1987)). "[T]he particularity requirement is not so exacting as to eliminate all discretion of the

executing officers".  United States v. Longo, 70 F.Supp.2d 225, 250-51 (W.D.N.Y. 1999) (Skretny, J./Foschio, M.J.) (*citing* United States v. Riley, 906 F.2d 841, 844 (2d Cir. 1990)). "Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." United States v. Young, 745 F.2d 733, 759 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985).

In arguing that the search warrants were overbroad, Liu repeatedly states that they "neither mention[ ] 'crime' at all nor even the offenses under investigation".  Liu's Memorandum of Law [53], pp. 25, 26 ("the warrant does not even mention the crimes under investigation or expressly indicate that the property to be seized must be recognized as evidence of crime, or an [*sic*] particular crime", "in our case, there is no reference to crime at all in the warrant").  This is belied by the record.  In identifying the items authorized to be seized, the introductory paragraph of Attachment A to the warrants states: "All records *relating to violations of 18 U.S.C. §§1832, 2314 and 1030(a)(4),* those violations involving Yi Liu".  [123], p. 6 of 42 (emphasis added).

Beyond specifying that the records were to relate to these crimes, it identified five categories of records, including "[r]ecords . . .  relating to an access of computers or computer networks owned or operated by or on behalf of Sprung-brett" , [r]ecords and information relating to Sprung-brett", "[r]ecords . . . relating to technologies developed by or that could be derived from technologies developed by Sprung-brett", [t]echnical information and . . . drawings that are trade secrets or reflect the use of trade secrets belonging to Sprung-brett", and "[r]ecords . . . relating to communications with [an individual identified in SA Valenzuela Affidavit who Liu

allegedly e-mailed Sprung-brett's trade secrets to following the return of Sprung-brett's laptop computer and external hard drive]" (id.).

Given this further particularity, the search warrants fall far short of being "wildly overbroad" with "really . . . no limits except the imagination of the searching officers", as Liu alleges. Liu's Memorandum of Law [53], p. 25. With the charges under investigation, it is difficult to conclude that the SA Valenzuela did not do "all that could reasonably have been expected in drawing up the warrant". Young, 745 F.2d at 759. Therefore, I recommend that this portion of Liu's motion be denied.

### 3. The Good-Faith Exception

Even if the search warrants were determined to be deficient, the government argues that "the exclusionary rule does not require suppression of evidence seized in good-faith pursuant to a warrant". Government's Response [56], p. 12. Suppression is to be the "last resort, not [the court's] first impulse". Herring v. United States, 555 U.S. 135, 140 (2009). "Thus, in United States v. Leon, the Supreme Court recognized an exception to the exclusionary rule for 'evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant.'" United States v. Clark, 638 F.3d 89, 99 (2d Cir. 2011).

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance' on an invalidated warrant . . . . In assessing whether it has carried that burden, we are mindful . . . that most searches conducted pursuant to a warrant would likely fall within its protection." Id. at 100. "[A]gainst this presumption of reasonableness", four circumstances have been identified where the good faith presumption of reasonableness will not

apply to preserve evidence from suppression: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Id.  "The Leon good faith exception has been applied when a warrant lacked particularity . . . or improperly authorized a 'general warrant'".  United States v. Smith, 2007 WL 2088938, *5 (W.D.N.Y. 2007) (Arcara, J).

For the reasons already discussed, I conclude that  the search warrants, even if determined to be facially deficient in terms of probable cause or breath, were not so deficient that reliance upon them by the executing officers was unreasonable.


## 4.      Overbroad Execution

Without identifying any specific evidence that was allegedly seized outside the scope of the warrants,  Liu argues that "the agents made a wholesale seizure of a large quantity of irrelevant and unspecified property".  Liu's Memorandum of Law [53], p. 28.  If suppression is not granted in its entirety, he requests - without citation to any authority -  that "a process" be established for the return of the items that were improperly seized, whereby the government would be "directed to uniquely identify every item it has seized, and then, from that itemization, uniquely describe and identify any items which it maintains was properly seized pursuant to the terms of the warrant, and which also fits the definition of seizable property under Rule 41(b), and specifying the basis for that claim".  Liu's Pretrial Motion [51], p. 13, ¶12.

"The burden of establishing that the warrants in this case w[ere] . . . executed improperly is upon the defendant." United States v. Henry, 2013 WL 3836248, *4 (N.D.Ga. 2013) (*citing* Franks v. Delaware, 438 U.S. 154, 171 (1978)). As noted by the government, "[a]ll of the documents seized during both searches have been supplied to counsel". Government's Response [56], p. 14, n. 11 (emphasis omitted). Liu is also in possession of the search warrants and search warrant returns ([123], p. 3 of 42; [123-1], pp. 3-4 of 42). Since Liu has failed to identify any specific item that was improperly seized despite having the information to do so, Liu has neither established his entitlement to suppression nor to the establishment of a process for the return of any improperly seized property, and I recommend that this portion of his motion be denied.

**D.    Preclusion of Statements**

**1.    Telephone Calls from the Lexington County, South Carolina Jail**

Liu seeks preclusion of "any statements attributed to [him] as a result of recording of telephone calls from . . . jail . . . as non-consensual and as unreasonable wiretapping". Liu's Pretrial Motion [51], p. 30. The government responds that there were signs posted near the telephones in that jail alerting prisoners that their calls were subject to monitoring and recording. Government's Response [56], p. 17. "When an inmate has repeatedly received notice that calls placed on prison telephones are subject to surveillance, the evidence indicates that he is in fact aware of the monitoring program, and he nevertheless uses the telephones, by that use he impliedly consents to be monitored for purposes of Title III." United States v. Workman, 80 F.3d 688, 694 (2d Cir.), cert. denied, 519 U.S. 938 (1996).

Generally, an evidentiary hearing on a motion to suppress is required "if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact [exist]". United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005). Therefore, "the Court has discretion to deny a hearing where . . . the defendant's papers fail to create a dispute over a material fact". United States v. Carter, 2012 WL 4721117, *2 (W.D.N.Y.) (Schroeder, M.J.), adopted 2012 WL 4713900 (W.D.N.Y. 2012) (Arcara, J.) (citing United States v. Caming, 968 F.2d 232, 236 (2d Cir. 1992)). Since Liu has failed to submit an affidavit (or declaration) indicating that he did not understand that his calls were being monitored, I recommend that this portion of his motion be denied without a hearing.

2. **Immigration Proceedings**

Liu seeks to preclude the government from using at trial the statements he made to the immigration court for voluntary departure from the United States in proceedings conducted after he was released on bail in this case. Liu's Pretrial Motion [51], ¶¶75-78. Relying on United States v. Perry, 788 F.2d 100, 115-16 (3d Cir.), cert. denied, 479 U.S. 864 (1986), which held that a defendant is entitled to use immunity for testimony given during bail proceedings for offenses where a rebuttable presumption in favor of detention exists, Liu argues that his "testimony [before the immigration court] for the same purpose in a functionally equivalent proceeding brought by the government at its discretion should also be precluded from use against the accused at trial". Liu's Pretrial Motion [51], ¶¶77-78. However, as the government notes, Liu fails to cite any authority extending the use immunity afforded in detention hearings to deportation hearings. Therefore, I recommend that this portion of his motion be denied.

## E. Bill of Particulars

Rule 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense". United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). "[T]he burden is upon defendants to show that non-disclosure of the requested particulars would lead to prejudicial surprise at trial or would adversely affect defendants' rights". United States v. Duarte, 2014 WL 29366, *1 (W.D.N.Y. 2014) (Scott, M.J.).

"In deciding a motion for a bill of particulars, the important question is whether the information sought is necessary, not whether it is helpful." United States v. Conley, 2002 WL 252766, *4 (S.D.N.Y. 2002). A bill of particulars "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense". United States v. Henry, 861 F.Supp. 1190, 1197 (S.D.N.Y. 1994).

The court "has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form". United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). See United States v. Messina, 2012 WL 463973, *10 (E.D.N.Y. 2012) ("In determining whether a defendant has shown such necessity, the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery"). "Whether to grant a bill of particulars rests within

the sound discretion of the district court." United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).

Here, Liu seeks the following particularization and the government has provided the following responses:

**Counts 1 and 2:**

**No. 1.**

Request: "Specify the computer which was alleged to have been 'accessed.'" Liu's Pretrial Motion [51], p. 3.

Response: "This requested particular is answered by paragraphs 5    7 of the Introduction of the indictment." Government's Response [56], p. 7.

**No. 2**

Request: "Specify the date that the access occurred." Liu's Pretrial Motion [51], p. 3.

Response: "This requested particular is answered by paragraphs 6 and 7 of the Introduction of the indictment." Government's Response [56], p. 7.

**No. 3**

Request: "Specify the 'protected computer' referenced in these counts."   Liu's Pretrial Motion [51], p.

Response: "This requested particular is answered by paragraphs 5    7 of the Introduction of the indictment." Government's Response [56], p. 7.

**No. 4.**

Request: "Specify the basis on which it is alleged that the 'protected computer' qualifies as such under §1030((e)(2), and specifically whether it was 'used in or affecting', 'interstate or foreign commerce' or 'communication'" Liu's Pretrial Motion [51], p. 3.

Response:   "The aforesaid computer was, by definition, a protected computer because it was used in and affected interstate commerce." Government's Response [56], p. 7.

**Counts 3, 4 and 5**

**No. 5**

Request: "For each alleged 'trade secret' specify the 'product that is produced for and placed in interstate or foreign commerce' in which the alleged trade secret is used."  Liu's Pretrial Motion [51], p. 3.

Response: "Electric actuation system technology with application to Nuclear submarines, Air Force fighter jets and wind turbine technology." Government's Response [56], p. 7.

**No. 6**

Request: "Identify the 'person other than the owner of the trade secrets.'" Liu's Pretrial Motion [51], p. 3.

Response: "The government declines to provide the name of any person at this time as it has no obligation to disclose the names of its witnesses prior to trial." Government's Response [56], p. 7.

**No. 7**

Request: "Specify, in relation to Count 3, whether it is alleged that the defendant 'stole' or 'without authorization appropriate[d], [took], carr[ied] away, or concealed . . . or 'by fraud, artifice and deception obtained . . . the 'information' constituting alleged trade secrets, and the precise conduct constituting such action."  Liu's Amended Motion [70], pp. 1-2.

Response:  "[T]he government has evidence that the defendant violated the statute in the ways the violation is pled . . . We cannot be more 'particular.'" Government's Response to Liu's Amended Motion [73], p. 6.

**No. 8**

Request:   "Specify whether it is alleged, in Count 4, that what the defendant did was to: copy or duplicate or download or upload or replicate or transmit or deliver or send or communicate or convey the 'information' constituting alleged trade secrets, and the precise conduct constituting such action." Liu's Amended Motion [70], p.  2.

Response:   "[T]he government has evidence that the defendant violated the statute in the ways the violation is pled . . . We cannot be more 'particular.'" Government's Response to Liu's Amended Motion [73], p. 6.

**No. 9**

Request: "The government . . . has particularized the 'trade secrets' in this case as those reflected in ¶30 of the complaint. However, because the page numbers in that description, referring to a PowerPoint, do not appear to correlate with the PowerPoint provided to the defense previously, we request that that particularization be updated to

correspond to particular PowerPoint slides, and that the precise 'trade secret' therein be identified."  Liu's Amended Motion [70], p. 2.

Response:  The government argues that this request "is not really for a bill of particulars, but rather a request that the government help him marry up the Powerpoint provided to counsel in discovery with the listing that appears [in SA Valenzuela's Affidavit]".  Government's Response to Liu's Amended Motion [73], p. 6.

For the most part, the allegations of the Indictment [6], when coupled with SA Valenzuela's affidavits supporting the search warrants and Criminal Complaint, as well as the particularization offered by the government, provide Liu with sufficient particularization to enable him to prepare for trial and to prevent surprise.  A closer question, however, is presented by Liu's request (no. 9) for further particularization of the trade secrets.

Since "the core of criminality proscribed by the EEA is the theft of trade secrets" (Agrawal, 726 F.3d at  260) and given the expansive definition of "trade secret" (*see* 18 U.S.C. §1839(3)), it is plainly necessary for Liu to know which alleged trade secrets are at issue.  As discussed above, the government has attempted to accomplish this by pointing to SA Valenzuela's Affidavit submitted in support of the Criminal Complaint, which identified 11 pages from the PowerPoint referenced in the Indictment and provided a description of the trade secrets contained on those pages. [1], ¶30.  For example, by reference to specific pages of the PowerPoint presentation, SA Valenzuela's Affidavit stated that it "contained a  dynamic models simulation of the Warp motor with governing equations relating to Sprung-brett's unique WARP motor", "contained a Matlab Simulink . . . for the implementation of the WARP motor which Sprung-brett developed and which is unique in that it instructs the reader on the arrangement and

application of the mathematical components", and "contained a computer aided drawing ('CAD') of cross sections of a cycloidal reluctance actuator, a WARP derivative which Sprung-brett developed and which discloses a unique mechanical concept" (id.).

At this time, I conclude that the government has sufficiently apprised Liu of what the trade secrets are.  *See*  United States v. Groves, 2013 WL 5592911, *2  (W.D.Ky. 2013) ("Groves has been adequately apprised of the documents that are alleged to contain trade secrets. The Government has disclosed 245 pages of information and has provided Groves with access to the actual documents that are at issue. This process affords Grove adequate notice of the evidence that will be used against him"); *see also* United States v. Latimore, 2009 WL 3876172, *1-3 (E.D.Mich. 2009) (denying the defendant's motion for a bill of particulars where the defendant, who was charged with violating the EEA for allegedly stealing "a set of confidential documents containing costs and supplier strategies",  had been provided with nearly 3,000 pages of discovery and requested the exact documents that contained the trade secrets).

However, recognizing my limitations with respect to the technical aspects of this case, and without the benefit of expert submissions from either party, this portion of Liu's motion is denied, without prejudice to renewed motion supported by an expert affidavit as to why further particularization of the trade secrets at issue is necessary.

**F.      Motion for Discovery**

Liu seeks a variety of discovery:

**1.      Discovery Required by Rule 16(a)(1)**

Liu seeks discovery pursuant to Rule 16(a)(1)(E) and (F).  Liu's Pretrial Motion [51], pp. 4-7,  ¶¶9-13, 15, 17-27.  In response, the government responds that "as of the date of the filing of [its] response, it has fully complied with the mandates of subsections (a)(1)(A), (B) and (E) of [Rule] 16".  Government's Response [56], p. 8.  It also acknowledges that it has only "partially complied" with 16(a)(1)(F) as it relates to the laptop computer since it is awaiting completion of the forensics examination, but states that once that is accomplished it will comply with Rule 16(a)(1)(F) and (a)(1)(G) by providing the forensic report and examiner's resume to Liu's counsel (id.).

At this time, I have no reason to doubt these representations. *See* <u>United States v. Johns</u>, 336 F.Supp.2d 411, 424 (M.D.Pa. 2004) ("The court is entitled to rely on the representations of counsel, as officers of the court"); <u>Theodore v. State of New Hampshire</u>, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him"). Therefore, this portion of Liu's motion is denied, without prejudice.

**2.      The Legal Instructions Provided to the Grand Jury**

Liu seeks "the legal instructions provided to the grand jury regarding the elements and application of 18 U.S.C. §§1030, 1832, *et seq*. and 2314".  Liu's Pretrial Motion [51], p. 5, ¶14.  As noted by the government, there is no provision in Rule 16 that requires the government

to provide this information. Government's Response [56], pp. 8-9.  *See*  United States v. Upton, 856 F.Supp. 727, 752 (E.D.N.Y. 1994) ("Rule 16 does not provide a basis upon which this court can instruct the government to turn over the grand jury testimony").  Moreover, "obtaining grand jury instructions requires a showing of particularized need", which has not been established. United States v. Smith, __ F.Supp.3d __, 2015 WL 2445813, *3 (W.D.N.Y. 2015) (Wolford, J.). Therefore, this motion is denied.


### 3.      Favorable and Impeachment Information

Liu seeks production of  a variety of "favorable" and "impeaching" information immediately or as soon as its existence comes to the attention of the government or its agents. Liu's Pretrial Motion [51], pp. 7-9, ¶¶28-40.  In response, the government represents that it "has no evidence or information covered by any of these paragraphs but is mindful of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and, should it come into possession of any material that might be exculpatory or useful in impeaching any of its witnesses, it will provide that information (or evidence) [to] counsel in short order."  Government's Response [56], p. 9.  Again, at this time,  I have no reason to doubt the government's representations.  Therefore, this portion of Liu's motion is denied, without prejudice.


### 4.      Alleged Prior Misconduct

Liu seeks disclosure of any "alleged criminal or immoral conduct" by him that the government intends to use at trial.  Liu's Pretrial Motion [51], p. 9, ¶¶41-42.  The government responds that it "has no information about any 'criminal or immoral conduct [by] the defendant' .

. . thus rendering both requests moot." Government's Response [56], p. 9. Based on the government's representations, this portion of Liu's motion is denied as moot.


### 5.    Prior Statements of Witnesses

Noting the "large amount of documents and the highly technical nature of the case", Liu seeks disclosure of all prior statements of witnesses at least 90 days prior to the first pretrial conference with the trial court. Liu's Pretrial Motion [51], p. 9, ¶44. The government responds that "the Court simply lack the authority to grant the defendant's requests", without prejudice to renewal on "the eve of, or during, trial". Government's Response [56], p. 9.

I agree with the government, "[c]ourts in this Circuit have consistently held that district courts lack the power to mandate early production of Jencks Act material." United States v. Morgan, 690 F.Supp.2d 274, 286 (S.D.N.Y. 2010). *See* United States v. Coppa, 267 F.3d 132, 145 (2d Cir. 2001) (the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements"); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act"); United States v. Parris, 2014 WL 2745332, *14 (S.D.N.Y. 2014) ("The Jencks Act provides that the Government must produce prior statements of its witnesses after each has testified at trial and deprives the District Courts of the power to mandate early production of such material"). Liu cites no contrary authority. Therefore, this portion of the motion is denied, without prejudice.

However, the Jencks Act does not prohibit the court's authority to order disclosure of witness statements as mandated by <u>Brady</u> and its progeny. *See* <u>United States v. Thompson</u>, 2013 WL 6246489, *9 (S.D.N.Y. 2013) ("The Second Circuit has interpreted the Jencks act to 'prohibit[ ] a District Court from ordering the pretrial disclosure of witness statements,' at least to the extent that disclosure is not otherwise mandated by <u>Brady</u> and [<u>Giglio v. United States</u>, 405 U.S. 150 (1972)]"). In this regard, the government is reminded that "[t]o the extent that [Jencks] material and <u>Giglio</u> material overlap, the dictates of the constitutional pronouncements of <u>Brady</u> and <u>Giglio</u> control." <u>United States v. Hernandez</u>, 2010 WL 26544, *6 n. 2 (S.D.N.Y. 2010).

## CONCLUSION

For these reasons, Liu's non-dispositive motions are denied [51, 71], and I recommend that his motion to dismiss Count 6 be granted, but that his dispositive motions otherwise be denied.

Unless otherwise ordered by Judge Skretny, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by September 8, 2015 (applying the time frames set forth in Rules 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(b)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or  identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objection

Dated: August 20, 2015

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge